You may proceed. May it please the Court, my name is Bradley Duncan. I'm with the law firm of Hillis, Clark, Martin & Peterson in Seattle. We represent the appellant Campbell Walker. Your Honors, we have three separate appeals here. We have a lot of material. We make a variety of arguments. From a housekeeping perspective, I'd like to condense that. Obviously, we're happy to respond to any questions the Court may have. But what we'd like to do is focus on one of the three appeals, and that would be the Campbell Investment Company appeal, the CIC appeal. Is Mr. McCullough arguing as well? He will be with respect to the fiduciary duty question that arises. How are you going to split your time? You have 15 minutes between the two of you. What we would like to do is take 10 minutes on opening. I will quickly cede the floor to Mr. McCullough to discuss the fiduciary duty issues, which we consider to be certainly among the central, if not the central issue in the case. What I'd like to do then is talk about two additional issues, the latches issue and then the evidential. Maybe just a more straightforward answer. Sure. Will you take 10 minutes and he will take 5, including rebuttal? What I'd like to do is actually give him a couple of minutes in the 10 and then take 5 on rebuttal. All right. Okay? Thank you, Your Honor. Having said all of that, I will cede the floor to Mr. McCullough and we can get started on the fiduciary duty issue. It might have made more sense for him to get up there and say that. All right. Mr. McCullough? It may have. You have two minutes, I understand? A little more. All right. All right. I'm here for you, so as much time as you need to talk about fiduciary duties. All right. Thank you. Hugh McCullough on behalf of the appellant Campbell Walker. The court should give Campbell Walker a trial that applies the correct standard to fiduciary duties under Washington law and not one where his liability was already established using an incorrect legal standard on summary judgment. The court doesn't have to decide the main issue in the case, whether or not he breached his fiduciary duties. That can be for the trial court. What this court should decide, however, is that the trial court should give him that opportunity at trial. Okay. Could you state cleanly? I mean, I've read it in the briefs, but could you state cleanly here your view of the standard for fiduciary duty and your view of the incorrect standard applied by the district judge? So the standard of care for officers and directors under Washington law comes from Sections 300 and 420, and they are that directors and officers shall perform their duties in good faith, in applying a standard of care for reasonably prudent persons, and in a reasonable belief that what they're doing is for the benefit of the corporation. That's the standard in the applicable law. Okay. And where did the district court go wrong? The district court instead applied a safe harbor under Section 320 of the Business Corporation Act. That safe harbor actually defines whether articles of incorporation can exculpate officers and directors, and there are four different categories of conduct that you simply can't include within the articles of incorporation as exculpating them. And it is that legal error, as well as a misinterpretation of the safe harbor under Section 710, that led the district court unto the mistaken belief that if a transaction was an interested transaction involving Campbell Walker's father or Campbell Walker himself, and it did not receive approval from each of the other directors, then it was automatically a breach of fiduciary duty, and that's simply not the law. The law instead is that under Sections 300 and 420, so long as the director and officer follows those standards of good faith, care, and loyalty, then the last section of both 300 and 420 is very clear. The officer and director shall have no liability to the corporation with respect to acts that comply with those standards of conduct. Moreover, Section 710 is a safe harbor, which gives additional protection. If there is an interested party transaction, one involving a few statutorily defined issues such as related parties, then there are three different ways that, again, the officer, the director, I should say, can be insulated from liability. So I want to make sure I understand the structure of your argument. I suspect you're not arguing that every item of damage, it's over $4 million, if I recall, awarded by the district judge for breach of fiduciary duty. You're not arguing that none of that would be available under an appropriate standard of fiduciary duty? Are you saying that? I'm saying that certainly it is available for the trial court applying the correct standard to make a decision about each of those categories of damage. Were they a breach of fiduciary duty? Were they not? The district court was under the erroneous impression that it didn't need to reach that because it was under the impression that so long as the transactions were not approved by other directors, then it was automatically a breach of fiduciary duty. And therefore, the only remaining issue for the trial court to decide at trial was damages. Well, give me an example or maybe two of items of damages that you think satisfy the district judge given the district judge's standard but would not satisfy a standard for a breach of fiduciary duty. Well, let's take, for example, the attorney's fees and other professional costs that the company incurred. The company incurred I think something like $700,000 in various professional fees and attorney's costs over the years. And the testimony was that some portion of those, perhaps $8,000 to $10,000, involved interested parties. It was work performed for Campbell Walker's mother or it was work performed for Campbell Walker. With respect to that $8,000 or $10,000, to the extent that it did not receive approval from the other directors, then the corporation, then the trial court would need to decide, well, was this a breach of fiduciary duty? Well, that seems to me it clearly would have. But you're saying there are other parts of attorney's fees that were appropriately expended? There were. That's correct. For example? For example, most of those, according to Campbell Walker and Pat Greenway's undisputed testimony, most of that was done in the ordinary conduct of generating profit by Campbell Investment Company. But I want to address your question about whether $8,000 or $10,000 was clearly a breach of fiduciary duty. Well, if it's going off to serve personal function, I think it is. I don't see any way around that. Unless all of the other directors and shareholders knew about the conduct, knew about it for years, and simply acquiesced to it until Mr. Walker, Robert Walker, died. And then suddenly they decide to sue over conduct that they knew had been occurring for years. It was Campbell Walker's belief. That sounds like latches rather than breach of fiduciary duty. Well, it goes to Campbell Walker's good faith, and it goes to his duty of loyalty. If all the other directors and shareholders know that something is being done and don't complain about it for years, then it was perfectly reasonable for Campbell Walker to assume that the shareholders and the other directors thought, yeah, this is what the corporation should be doing. It doesn't. That partly goes to another question on the lawsuit as to how forthcoming Mr. Campbell Walker was with what he was doing. There's some evidence here that he really wasn't telling the others in the family what he was doing. That's correct. The others would testify at trial that they didn't know anything that was going on, but the issue is that the record on summary judgment created a genuine issue of material fact about that because both Campbell Walker, Campbell Walker's mother, as well as a number of third parties, all testified that their children knew, that this corporation and this structure existed for the benefit of the public. Okay. Do you have another example of an award of damages beside attorney's fees in which you say that there was no breach of fiduciary duty under the standard that you think is the appropriate standard? Yeah. I think another one would be the example of those transactions that involved other companies investing along with Campbell Investment Company. These were corporate opportunities that the plaintiffs alleged should have been given exclusively to Campbell Investment Company, and they did involve related parties. But once again, the question is, was given Campbell Walker's explanation, which is that the deals were simply too big for Campbell Investment Company to do alone, it was actually in the best interest of Campbell Investment Company to bring in other investors. Okay. Thank you. Your Honor, I'd like to speak to latches and the calculation of damages. And, Your Honor, I think several of your questions touch very directly upon the problems we're talking about here. And first with respect to latches, I think an understanding of the latches argument will sort of capture much of what this entire case is about. We're talking about a series of events that began essentially in 1999 or 2000, stretched over a decade, during which Robert Walker, the patriarch of the family and of this business empire, was very active in the operation of the business. And whether he should have been, his legal right to be involved in the operation of the business are things that are open to discussion, but he was. And that's really undisputed. All of these siblings knew about this. They knew how the company was being run. They knew how the company was being operated. Two of the siblings were directors. And under Washington law, as directors, in their capacity as directors, they are charged with knowledge of everything that's happening in the corporation. And that's the Senn case that we cite in our briefing. Did they know that Campbell had moved Argyle's records to Roswell, New Mexico? Yes, they did. And when did they know that? When did they know that, yeah. The record is a little bit unclear. It is our ñ we understand that they actually were aware at the time the records were moved from Edmonds, Washington, down to New Mexico that the records were being moved. When you say we understand, is there a record site that we can look to for that understanding? I'm going to have to supplement with that, Your Honor. I'm happy to do that. I don't have that record site immediately. What is the motivation for moving the records? Does the record tell us that? Well, the summary judgment record includes a declaration from Campbell Walker explaining the circumstances surrounding the relocation of those records. And, again, the company, for years and years, the company had been founded in 1929. For years and for decades, the company had operated in the Pacific Northwest. In the late 1990s, the function of the company and the nature of its investments began to focus on oil and gas in the Southwest. And the locus of the business was removed to Roswell, New Mexico. And that's where the business functioned from roughly 2000 to, I assume, now. But it was in connection with the relocation of the focus of the company's business that the records were moved. They weren't removed for some sort of nefarious purpose or to put information or documents beyond the reach of anybody. They were removed to New Mexico because it was a sensible thing to do in light of the nature of the company's business. But back to latches. Again, for years, this company operated in the way that it had. The siblings, including two directors, periodically raised issues regarding access to information. And there were factual disputes about the nature of those requests and about the nature of Mr. Walker's responses to those requests. But what cannot be denied is that there was knowledge that there were things about the way this company was being run that they didn't like. They didn't do anything about that. They didn't press it. They certainly didn't initiate litigation. And the reason they did not was because they didn't want to poke the bear, and the bear was dead. And that was the nature of the family dynamic. That's simply how it was. Robert Walker died in early 2013. The fight began almost immediately after that. Once Robert Walker had died, all of a sudden they're prepared to litigate. They're prepared to raise issues. That sequence of events goes to the very heart of latches. Had these issues been raised at a time when Robert Walker was actually alive, Robert Walker would have been able to testify about the nature of his involvement. Let me ask you this. What does your latches argument go to? Does it go to the removal of Campbell Walker from Argyle? Does it go to fiduciary duties to CIC? Does it go to both? I mean, help me understand the focus of the latches argument. It goes to both, Your Honor. The issues, there is conceptual overlap between the issues involved at the CIC level and the purported willful misconduct at the Argyle partnership level. There just is. And the latches defense, from our perspective, goes to both. So if it is sufficient to justify the removal of Campbell Walker from Argyle, any one of the three grounds found by the district court, does latches apply to all three of those? We believe it would, Your Honor. So why does it apply to moving the records to Roswell? I mean, there it says you can't move the records outside of Washington State without permission of the board. That didn't happen. I mean, what's latches have to do with that? Who's going to testify that that's not what the requirement is? Well, it's a question of whether, well, I think it's a fair question, but I think the removal of the records, remember what that is. That is simply a basis for his removal as general partner at the Argyle. Well, that's why I'm asking you what does latches go to, and you say it goes to removal as general partner of Argyle, and he wasn't supposed to move the records. He did move the records. Arguably. Well, what's the testimony that the father could have provided that would have affected the analysis? With respect to the removal of records, I think his testimony would have been, when I was running these businesses, I made the decision in the late 1990s to remove the business, the focus of the business from the Pacific Northwest to the South. Now, I understand where you're going with this. I mean, but, yeah, so he made the decision, but it was wrong. So he made the decision. Campbell Walker made the decision. Whoever made the decision is wrong. Well, as it relates to the removal of the records. That's the legal analysis, and if that's the legal analysis, which you can dispute, of course, but if that's the legal analysis, I don't see where latches comes in. As it relates to the removal of the records? Correct. Okay. Well, it's a fair point. But our response would be it's all part of the same complex. In other words, these folks were involved in our estimation or were aware of or were chargeable with knowledge of essentially everything that happened here. And that's the supplemental site you're going to provide? Yes. Would you like to reserve your remaining 45 seconds? I would, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Malaika Eaton. I was counsel for RRW at Summary Judgment Below, and then by the time of the CIC trial, I became co-counsel for CIC with Lane Powell, and I'm with the law firm of McNall Eble. As you know, and as the Court's questions have pointed out this morning, there's a series of different matters at issue before the Court. You have the challenge of RRW's removal of Campbell Walker and its appointment. That was a declaratory judgment action resolved on summary judgment. You have a actually very narrow, and counsel's remarks this morning sort of gloss over that, but a very narrow summary judgment ruling with respect to CIC on breach of fiduciary duty only for the Darshan payments, only for the Darshan payments. And then you have a trial challenge for the CIC trial, and then finally the attorney's fees challenge, so sort of a collection of four different issues. As for the trial, and it seems that counsel's focusing on the CIC issues, and unless the Court has particular questions, I will do the same. As for the trial at its core, what Campbell Walker is asking this Court to do is to give him a do-over of a multi-day trial to supposedly allow him to present the very evidence that he was allowed to present at trial, and in fact the very evidence that the Court relied on, the trial Court relied on, to reject a not insignificant portion of CIC's damages. Much of the trial in this case was focused on exactly the issues that counsel complains he was precluded from offering. Specifically, were the transactions fair for CIC? Was there a business justification, for example, as the trial Court pointed out in discussions with the parties, was there a business justification for the massive amounts of world travel that Campbell Walker did to, quote, see fascinating things? Well, I was interested to note, and it did not surprise me, that that was not the example given when I said, well, give me some examples where there was no breach. Could you talk about attorney's fees? Because that's what he started with, and there appears to be a fair amount of money at stake if we agree with him. That's exactly right, and I noticed that he did not actually refer to the findings of the trial Court on this issue, and that's significant. If you look at ER 10, that's the findings, in fact, and conclusions of law of Judge Peckman after the multi-day trial, she went category by category, and her analysis was careful. And the one thing that counsel didn't mention, and a finding that's critical here on attorney's fees, is as follows, and again, this is section, I'm sorry, paragraph 15, which is the carryover paragraph onto page 10 of the excerpts of record, and that's as follows. Defendant failed to maintain sufficient records to delineate between expenses performed for CIC and expenses for services performed for his benefit or the benefit of his mother and her company. In other words, the trial court was allowed to and did evaluate two different types of breaches of fiduciary duty at that trial, and what Campbell Walker is asking this court to do and what the law does not permit, he wants to excuse one breach of fiduciary duty, that is having the company perform services for his personal benefit, for his mother's personal benefit, by reference to another, which is his failure to maintain the records of the company that was under his control for more than a decade. This was persistent. You'll see the court persistently came back to this in her findings and conclusions. She was not required at trial as the finder of fact to credit Campbell Walker's self-serving testimony that there was only a few thousand. He also testified, by the way, that those were freebies that were not charged, which, of course, was belied by his own lawyers' letters declaring that some of these fees were for services performed for Campbell Walker personally. So to attack the attorney's fee issue simply does not fairly represent the record before the trial court, at the trial, where she was fairly focused. And that's why she carved us back. We went after more than this. She was fairly focused on what benefit did the company get. He also gave the example of the related entity deals, the sharing arrangements between Pabo, Cougar, and McVeigh, some of which were companies either owned by Campbell Walker or controlled by Campbell Walker for the benefit of his mother. And he ignored again the testimony before the trial court. Mr. Parton, our expert, testified that those transactions did, in fact, harm CIC. And Tia Walker testified that the contract provision upon which these sharing agreements were based contained a harmful provision for CIC that required CIC to take over interests of poorly performing deals and allowed Campbell Walker's entities to back out of them. So in other words, they had a one-way bet on these sharing transactions. That was the evidence before the trial court. So again, I don't believe that Campbell Walker is providing a fair sense of what the trial was really about, because if you look at the summary judgment order, the trial court not only specifically found that there were issues of fact with respect to every single aspect of the breach of fiduciary duty claim other than the Darshan payments, but she specifically found that there were issues relating to laches as well with everything except the Darshan payments. So to have Campbell Walker come before this court and declare that all he wants is a trial where he's allowed to present this evidence simply falls flat. And that summary judgment, the court did, and the record before the court, remember this court's review is de novo, so we look at what is the evidence that the trial court had. And not to be unduly flip, but Campbell Walker's position can be boiled down to the following proposition. It's Campbell Walker's position that on summary judgment, evaluating the CIC issues, that the district court was required to credit his declaration that these payments to Darshan were for services performed by Robert Walker, valuable services for CIC. When those payments, it was undisputed, continued, unabated for a year after Robert's death. This district court was not required to believe or credit that he reasonably and in good faith felt like paying for Robert Walker to continue to provide services after he died was good for CIC. It simply cannot be credited. I do also want to note that counsel referenced that the dad would have wanted this defense. It's a little bit of that, and let me be clear, Your Honor, because there's two separate arguments that they want to pursue at the same time. So they want to say, oh, it was for Robert Walker's services, that's why all these payments were being shifted offshore to Darshan. And then there's also the, well, I sort of knew it was wrong, but dad made me do it and he would have removed me as general partner had I refused his wishes. Neither one of those helps him. At the end of the day, if it was for services, well, that was belied by his own deposition testimony and the mere fact that Robert Walker cannot continue to provide services after his death. If it's instead, on the other hand, oh, no, daddy made me do it, and I didn't have a choice because I'd be removed, well, then you're admitting that you're accepting a personal benefit, i.e., your continuation of salary and benefits as CIC's president, and you're sacrificing your fiduciary duties to do it. That proves a breach of fiduciary duty. It doesn't excuse it. But just sort of an umbrella over all of this, isn't the reason that there were these vast sums was Robert Walker's investment acumen? In other words, was that the reason for the Darshan payments? No, no, no, just the fact that this, for lack of a better description, pile of money existed was because of Robert Walker's investment acumen. I think that it was undisputed below that Robert Walker was a good businessman. The companies preexisted Robert Walker, so I don't know that we have evidence in the record, and I'm not aware, to go to Judge Fletcher's comment, I'm not aware of, frankly, what the value of the various business was before Robert Walker took over. But nobody disputed that he was a good businessman. The question still remains, though, you can't provide, even a good businessman cannot provide services to CIC or advice to CIC after his death. From the grave. Correct. Sometimes there's compensation after the fact, but I suspect that's not your argument. There was no evidence whatsoever of that. And, in fact, part of the problem that we saw with counsel's argument this morning is that they rely on declarations that the district court struck, and they have not challenged the district court's determination that the declarations other than Campbell Walker's at summary judgment needed to be stricken. So they're trying to rely on those declarations that weren't properly in the record before the district court, given her order striking them. And they're also trying to rely on the declaration of Campbell Walker when it belied his own deposition testimony. At his deposition, and we submitted this to the district court on summary judgment, so it was in the record. At his deposition, Campbell Walker admitted that the reason or the basis for calculating how much money should be shift offshore wasn't for services. He admitted that it was to legally move money where it made the most sense to avoid taxes. So he can't then come before the district court and say, oh, no, no, no, no, no, this was for services. Even if he could, he also admitted during his deposition that part of the payment was for his services. So he's being paid by CIC to manage CIC as its president. He's getting generous salary and benefits. And at the same time, supposedly he's paying himself through Darshan League, which after Robert's death was a company that there's no dispute he fully owned and controlled. So it's simply the record before the summary judgment court was clear that she was ruling only on Darshan payments. And on that issue, there is no dispute that he breached his fiduciary duty. And, in fact, she made a finding that he had, based on the undisputed evidence, received benefits at the expense of CIC. About the Lachey's argument, which, as he's indicated, it does flow in and among the various claims. And they'll provide us some supplemental statement as to where we find that in the record. From your perspective, obviously your argument would be they didn't know or there was a period when they didn't know. Where do we see that in the record? Let me be very clear on this because, again, just as the other issues, Lachey's has two different components and it's very important to keep them separate. The trial court summary judgment ruling was only on the Darshan payments. There is no dispute that the record before summary judgment was that none of the siblings knew about the Darshan payments. Those were kept secret. And they were ongoing. So they continued, again, unabated after Robert's death, up to $50,000 that Campbell Walker authorized to pay himself after he was removed as general partner and the day he was removed as president of CIC. So, and then, of course, once the siblings learned of that, RRW took steps immediately to file a declaratory judgment action. There was absolutely no delay whatsoever once they learned of those payments. CIC filed suit later on that same year. And, of course, there was, again, so the two factors for Lachey's are delay and substantial prejudice. He had to show both. He didn't show either. So we have no delay on the Darshan payments. And then in terms of substantial prejudice, again, can Robert Walker come in and justify the payments that were made after his death? Absolutely not. So there's simply no basis for Lachey's. And the trial court, frankly, was right in concluding that even if Robert Walker came in and said, yes, I wanted these payments, and there was, you know, a dispute as to whether he would have said that, but let's say he did. Campbell Walker is the only person with legal responsibility for these entities, period. So it doesn't excuse it. Now let me step to the second issue because, again, Lachey's does go to both the RRW claims and the CIC claims. Lachey's is to the CIC claims. The only issue she ruled on, and this is clear from her order, was the Darshan payments. As to summary judgment. As to summary judgment. So Campbell Walker was allowed to, and we anticipated he would, come in and make those arguments at trial. And then what happened? He doesn't show. He doesn't show. He doesn't show for exactly the testimony that we anticipated and his counsel promised in opening argument he would make, which is I'm going to talk about the Darshan payments. I'm going to talk about why I did what I did. I'm going to say how it was good for CIC. We delayed the trial specifically so that he could come back to the country after he left without notice to, I think, even his lawyer, in all fairness, and postponed it for a time when he could come, and he simply no-showed. So to now have him have a do-over of that would be fundamentally, frankly, unfair to all the parties after having gone through all this, assuming he would even show up for trial if he were at a second round. Which brings me to one last point, and then I see my time has almost expired. The remedy that, for example, cases like Interlake Porsche and the like refer to is a remand for an accounting. That was a remedy we requested below, and Campbell Walker opposed successfully. The district court did not grant our request for an accounting. So to have him come and say now we need a do-over, and not only that the proper remedy is an accounting under the cases he relies on, he should not be allowed to come before this court and make such a request after the parties went through the effort of trying this case and allowed him to present at least the opportunity to present the evidence that he claims he was precluded from. Thank you, Your Honor. Thank you. Would you add a minute? I'll give you an extra minute here. Thank you, Your Honor. I'd like to start with counsel's observation that the ruling at summary judgment was very narrow. Yes, it was very narrow. It was limited to Darshan, and as a legal matter, it was predicated, the finding of fiduciary duty breach was predicated entirely upon the proposition that these were conflicting interest transactions that had not been approved by disinterested members of the board, which under the circumstances of this board would have been an impossibility because there were no disinterested members. But that's the point. That's the font from which all of this flows. And what counsel does not talk about is the fact that immediately following the argument on summary judgment, we had a pretrial conference. And the purpose of that pretrial conference was to establish what we were going to be dealing with at trial. And Judge Peckman was absolutely clear. She didn't want to hear about whether the brother was a good guy or a bad guy and that the only purpose of the damages trial, a bifurcation which plaintiff's counsel had requested, liability at summary judgment, damages at trial. That's what they wanted to do. And acceding to that, Judge Peckman said, this is going to be about dollars and cents. I don't want to hear a bunch of family drama. I don't want to hear about whether he was a good guy or a bad guy. We're just going to be tallying up money. And under this court's authority, including in Hopkins v. Dow Corning, the court acknowledges that once a district court makes a determination at summary judgment, that determination sets the rules. In fact, the plaintiffs here had a problem. They had basically created a needle with a very small eye and had led the district court into a legal determination that created that very small eye, but they had a bunch of stuff that they had to jam through it. And they had a predicament. And they dealt with it by essentially showing up at trial and putting on a completely different case. Ms. Eaton has talked at some length about the evidence they put on about business justification and various breaches of fiduciary duty. We weren't at that trial to deal with additional liability questions. You may want to wrap it up as you seated. I think I've made my point, or at least I've articulated my point. Yes, you have very well. Thank you. Thank you. Thank you. Thank all counsel for your argument this morning. The case of RRW Legacy v. Campbell Walker is submitted.
judges: Hawkins, McKeown, W. Fletcher